# BUCHANAN *v.* PATTERSON.

ERROR TO THE COURT OF APPEALS OF THE STATE OF MARYLAND.

No. 266. Argued April 29, 30, 1903.—Decided June 1, 1903.

An administratrix of one who in 1818 became a member of a firm which had in 1798 sustained losses, resulting in what are known as French Spoliation Claims, presented the claims under the act of 1885 to the Court of Claims and obtained awards therefor. The findings clearly showed that the Court of Claims proceeded on the assumption that her intestate was a member of the firm when the losses were sustained. In 1899, Congress appropriated money to pay certain claims which had been favorably passed on by the Court of Claims including those awarded to this administratrix as such and as representing such firm. After collecting the amounts she applied to a state court of competent jurisdiction for instructions as to distribution of the fund. Next of kin of the partners of 1798 denied that her intestate could share in the fund under the provisions of the act of 1885, which limited payments thereunder to next of kin of the original sufferers; she contended that the awards of the Court of Claims and the appropriation by Congress to her as administratrix were conclusive as to the right of her intestate to participate in the awards.

*Held,* that it was not the duty of the Court of Claims under the act of 1885

to investigate and determine the rights of each individual of a class, but only to determine the validity and amount of a claim with a specification of ownership sufficient to identify the claim itself for the payment of which an appropriation might thereafter be made, and the particular individuals of the class would be matter for subsequent investigation by some other tribunal.

*Held,* that it was not within the intention of Congress to conclusively determine by the appropriation act of 1899 what persons were entitled thereto, but the payments were intended to be for the next of kin of the original sufferers.

*Held,* that as it was clear in this case that the party named in the appropriation act was not entitled absolutely to the money as her own, and as she had submitted the question of distribution to a court of equity, that court had jurisdiction to determine the real meaning and proper construction of the act of Congress and who were entitled to the funds in her hands.

*Held,* that on the facts in this case, there was no error in holding that the next of kin of the members of the firm in 1798 were entitled to the fund to the exclusion of the next of kin of one who subsequently became a member thereof.

THE plaintiff in error, Esther S. Buchanan, filed her bill in Circuit Court No. 2, of Baltimore city, on August 17, 1899, against the parties defendant, for the purpose of obtaining the instructions of that court as to whom and in what proportions she should pay and distribute certain sums of money received by her from the United States under what are termed the French Spoliations acts of Congress. Answers were made by the various parties and a decree was subsequently entered giving directions for the distribution of the funds. An appeal from that decree was taken by some of the defendants to the Court of Appeals, and that court reversed a portion of the decree, (as to the proper distribution of the money,) and remanded the case for further proceedings. 92 Maryland, 334. The trial court then entered a decree in accordance with the directions of the Court of Appeals, and thereupon the original plaintiff, Esther S. Buchanan, appealed to the Court of Appeals, and that court then affirmed the decree of the court below. 94 Maryland, 534. Plaintiffs in error bring the case here by writ of error.

The first act of Congress relating to the French Spoliations was passed January 20, 1885. 23 Stat. 283.

Miss Buchanan was, in May, 1885, duly appointed administratrix upon the estate of her father, William B. Buchanan, deceased. She then, through her counsel and in common with other claimants for losses sustained by the seizures of the two vessels Patapsco and Jane, came into the Court of Claims and proved the facts upon which the rights of the several claimants were based as against the United States. In presenting the claims, she did in truth represent, with their consent, all the parties interested therein, including those now claiming against her.

The court reported (May 18, 1887) that the seizures of the two vessels complained of were illegal, and that the claimants were entitled to the following sums from the United States. A list was then given of those entitled to an appropriation, on account of the ship Patapsco, in which was included the name of Esther S. Buchanan, as follows:

" Esther S. Buchanan, administratrix of the estate of William Buchanan, who was the surviving partner of the firm of S. Smith & Buchanan, deceased, to the sum of $25,056."

In relation to the ship Jane, in the list of those entitled to an appropriation was the following:

" Esther S. Buchanan, administratrix, representing Smith & Buchanan, $11,660.21."

After this report had been made, and on March 23, 1891, Esther S. Buchanan was duly appointed administratrix *de bonis non* with the will annexed of the personal estate of James A. Buchanan, her grandfather.

No action of Congress in relation to these claims was had until 1899, when an act was passed, approved March 3, 1899, 30 Stat. 1161. The act provided for the payment of claims allowed under the Bowman and Tucker acts by the Court of Claims, and on page 1191 it provided as follows:

" French Spoliation Claims.

" To pay the findings of the Court of Claims on the following claims for indemnity for spoliations by the French prior to July thirtieth, eighteen hundred and one, under the act entitled 'An act to provide for the ascertainment of claims of American

citizens for spoliations committed by the French prior to the thirty-first day of July, eighteen hundred and one:' *Provided,* That in all cases where the original sufferers were adjudicated bankrupts the awards shall be made on behalf of the next of kin instead of to assignees in bankruptcy, and the awards in the cases of individual claimants shall not be paid until the Court of Claims shall certify to the Secretary of the Treasury that the personal representatives on whose behalf the award is made represent the next of kin, and the courts which granted the administrations, respectively, shall have certified that the legal representatives have given adequate security for the legal disbursements of the awards, namely."

Then follow appropriations to a number of claimants in satisfaction of the losses sustained by the illegal seizures of vessels and cargoes.

Among them, on page 1194, is included the following:

" On the ship Jane, John Wallace, master, namely :

" Esther S. Buchanan, administratrix, representing Smith & Buchanan, $11,660.21."

On page 1195 is the following :

" On the ship Patapsco, William Hill, master, namely :  . . (names of various claimants for other interests in same ship).

" Esther S. Buchanan, administratrix of the estate of William B. Buchanan, who was the surviving partner of the firm of S. Smith & Buchanan, deceased, $25,056, the value of the cargo shipped by said firm."

Pursuant to the proviso in the act of 1899, the Court of of Claims, upon the application of the attorney of record for Esther S. Buchanan, administratrix, representing Smith & Buchanan, deceased, ordered, in the case of the ship Jane, a certificate to be issued to the Secretary of the Treasury, as follows :

" The Court of Claims hereby certifies that it appears by evidence on file in the above-entitled case that said Esther S. Buchanan, on whose behalf an appropriation or award was made by the act of March 3, 1899, entitled ' An act for the allowance of certain claims for stores and supplies reported by the Court of Claims under the provisions of the act approved March third,

eighteen hundred and eighty-three, and commonly known as the Bowman act, and for other purposes,' for the sum of eleven thousand six hundred and sixty dollars and twenty-one cents ($11,660.21), represents the next of kin of William B. Buchanan, the surviving member of the firm of Samuel Smith & Buchanan, deceased, the original owner of the claim upon which said award was made.

"And the court further certifies that it appears on the record of the said case that at the time when the award of this court was made the said claim was not held by assignment or owned by an insurance company."

The same kind of a certificate was made in relation to the ship Patapsco.

These certificates were made on June 15, 1899, and were filed with the Secretary of the Treasury, and the moneys mentioned, being a total of $36,716.21, were thereafter paid to Miss Buchanan.

Having received the money from the Government, the plaintiff in error then commenced this suit individually, and as administratrix of the estate of William B. Buchanan, deceased, and as administratrix de bonis non with the will annexed of James A. Buchanan, deceased, in Circuit Court No. 2, of Baltimore city, in which she stated the various facts under which the money had been paid her, and that she had in her hands for distribution, among the persons particularly entitled to the same, the sum of $22,629.47, after the payment of all costs, etc. She also averred that she was advised that she held funds for the benefit of and distribution among, not only the next of kin of her own decedent, the said William B. Buchanan, but also the next of kin of the other partners of said firm of S. Smith & Buchanan, to wit, Samuel Smith and James A. Buchanan, in the proportions and according to the laws of distribution which the court might hold to be proper in the cause. She also gave the names of the next of kin of William B. Buchanan, namely, herself and her brother, Wilson C. Buchanan, and then stated who were the next of kin of James A. Buchanan, deceased, living at the date of the passage of the act of Congress directing the payment of the claims, to wit, March 3,

1899, so far as they were known to her, and she stated that she had given the names of all of the next of kin of Samuel Smith and James A. Buchanan living at the time of the passage of the act of Congress, March 3, 1899, although she said there might be others unknown to her who might lay claim to participate in the distribution of the fund, and she was in doubt as to the proportion in which the beneficiaries should participate in the shares of their ancestors in the fund. She then stated:

"Twelfth. That according to the information and belief of your oratrix, the said Samuel Smith, James A. Buchanan and William B. Buchanan were equal copartners, but a claim has been made on your oratrix by Robert Carter Smith, one of the distributees of Samuel Smith, and a party defendant herein, wherein he asserts that his ancestor, the said Samuel Smith, had a one half interest in the property of said copartnership, and that, therefore, the next of kin of the said Samuel Smith are entitled to have for distribution among them one half of the fund now in the hands of your oratrix for distribution; but your oratrix is informed and does verily believe that distribution of said fund should be made in three equal parts among the next of kin of the three partners in said firm of S. Smith & Buchanan."

Other facts were given in relation to the existence of parties who might possibly claim some interest in the fund, and in her complaint she finally said that, by reason of the facts above set forth, she was in doubt to whom and in what proportion she should pay and distribute the sum of money in her hands, and that she was advised and therefore alleges that a distribution of the same can only be had under the order of a court of equity in a manner adequate to insure her own protection in the future. She thereupon asked that the court assume jurisdiction of the fund in her hands as administratrix, as already set forth, and that it direct and supervise the distribution of the same among the parties whom the court may find to be entitled to participate therein, according to the proportion and rule which this court may declare to govern the same.

Answers were made by some of the parties and the bill taken as confessed as against others. Upon the trial evidence was

given under objection, and the state court has found that at the time of the illegal seizures of the vessels in 1798 William B. Buchanan was about three years old, he having been born on September 9, 1795; that in 1798, the year the losses occurred, there was a firm of S. Smith & Buchanan, consisting only of S. Smith and James A. Buchanan, the father of William B. Buchanan, and they were the only original sufferers from the illegal seizures of the ships. William B. Buchanan did not become a member of the firm until about twenty years later, or until January 1, 1818, and he became the survivor of the firm formed in 1818, which was also known as S. Smith & Buchanan.

It thus appears that although William B. Buchanan was the survivor of a firm of S. Smith & Buchanan, as that firm was constituted in 1818, he was not the survivor of the firm of S. Smith & Buchanan, as that firm was constituted in 1798, when these illegal seizures occurred.

The trial court held that the moneys should be divided into three portions, one of which should go to the next of kin of Samuel Smith, another to the next of kin of James A. Buchanan and another to the next of kin of Willian B. Buchanan, being Esther S. and Wilson C. Buchanan.

The Court of Appeals, on appeal from the decree of the Circuit Court, held that this was an erroneous disposition of the money, and that it should be divided into two portions, one of which should go to the next of kin of Samuel Smith, and the other to the next of kin of James A. Buchanan; Samuel Smith and James A. Buchanan being the only members of the firm that sustained the losses and being the original sufferers from the illegal seizures. The writ of error has been sued out for the purpose of reviewing this decree.

*Mr. Archibald H. Taylor* and *Mr. Edward P. Keech, Jr.,* for plaintiffs in error. *Mr. John Pierce Bruns* was on the brief.

*Mr. Arthur W. Machen, Jr., Mr. Frank P. Clark* and *Mr. Arthur W. Machen* for defendants in error.

Mr. Justice Peckham, after making the foregoing statement of facts, delivered the opinion of the court.

The contention of the plaintiffs in error is that Congress, by the acts mentioned, and particularly that of March 3, 1899, ratified and adopted the findings and decisions of the Court of Claims made in pursuance of the act of 1885, in the cases of the two ships Patapsco and Jane, and that the act of 1899 recognized and designated William B. Buchanan as an original sufferer within the meaning of Congress, by virtue of his being a partner, and the surviving partner, of S. Smith & Buchanan, and that the act gave to the personal representative of William B. Buchanan the awards in question, for the benefit of his next of kin and the next of kin of his two partners. They also assert that the Court of Claims having made the additional final certificate required by the act of Congress, and the Secretary of the Treasury, in accordance with those certificates, having paid the money to the plaintiff in error, administratrix, for the benefit of the next of kin of William B. Buchanan, to the full extent of his partnership interest in the firm, there was no power in any court to in anywise alter the statute or make any other distribution than such as would give to the next of kin of William B. Buchanan one third of the total sum to be distributed.

It becomes necessary, in order to fully appreciate the action of the Court of Claims and of Congress subsequently to the passage of the act of 1885, to examine the latter act and determine its scope and purpose. The act provided for an investigation to be undertaken by the court as to the validity of the claims for indemnity upon the French Government, for losses of citizens of the United States or their legal representatives, arising from illegal captures, seizures, etc., of vessels or cargoes prior to the treaty of 1800 between France and the United States. The act did not assume to provide for the identification of all the next of kin of the original sufferers from such illegal seizures. The court was to determine the validity and the amount of the claims included within the description contained in section 1 of the act of 1885, and it was also to de-

termine the present ownership of such claims. The matter of chief importance between the claimants and the United States was for the court to ascertain and determine the validity and the extent of the claims.

The particular class of persons who were the owners of the claims and to whom the moneys might be properly paid was at this time of subsidiary importance, so far as the United States was concerned. Although the present ownership was to be determined, and if by assignee, the date of the assignment and the consideration paid therefor, yet this was obviously for the mere purpose of informing Congress as to the present situation of a claim, whether owned by next of kin of those who suffered the loss or by assignees, but the particular individuals who composed the next of kin or the assignees were not then of importance, as gathered from the language and purpose of the act. All this action of the court was by the terms of the act made advisory only. Congress specifically withheld from the court any right to render a judgment which would in any manner conclude the United States or commit it to the payment of any claims determined by the court under the third section of the act. All that Congress did was to give jurisdiction to the Court of Claims to inquire into the matter of each claim which might be presented to it and to report to Congress its opinion of the validity and the amount of the claim with a statement as to its ownership. The whole subject thereafter remained with Congress subject to its future action.

Regarding its powers and duties under this act, the Court of Claims itself stated its opinion in the case of *The Ship Jane*, 24 C. Cl. 74. It held that the court could not determine to whom the money should be distributed, which Congress might thereafter award as indemnity in the French Spoliations cases, nor could it determine who were the next of kin of a deceased claimant, nor whether there were any. All that the court could determine in its report to Congress was the validity of a claim against France, its relinquishment by the United States and the amount thereof. It also held that its decisions in these cases were not judgments which judicially affect the rights of any one, and that after the court had reported a French Spolia-

tion case it remained with Congress to determine, first, the measure of the indemnity which. the United States should give; and, second, the persons who were equitably entitled to participate therein. · The purpose of the court was, as it stated, to require a claimant to file his letters of administration and prove to the satisfaction of the court *that the decedent whose estate he administered was the same person who suffered loss through the capture of a vessel.*

Again, in *The Leghorn Seizures (Field, Administrator,* v. *United States),* 27 C. Cl. 224, the court held that the French Spoliations act of 1885 conferred jurisdiction, but did not impose liabilities; that Congress conceded that several classes of claimants seeking redress for French spoliations might come into the Court of Claims and have the question of the liability of the United States determined, and conceded nothing more.

From these extracts it is plain that the Court of Claims did not regard it as its duty under the act of 1885 to investigate and determine the rights of each individual of a class, but only to determine the validity and amount of a claim, with a specification of ownership sufficient to identify the claim itself, for the payment of which an appropriation might be thereafter made. The particular individuals of the class would be matter for subsequent investigation by some other tribunal.

In *Blagge* v. *Balch,* 162 U. S. 439, the meaning and purpose of the act of 1885, together with the act of March 3, 1891, 26 Stat. 862, 908, came before this court for consideration, and it was held that the result of the action of Congress was to place the payments prescribed under the act of 1891 within the category of payments by way of gratuity and grace, and not as of right as against the Government; that under the proviso contained in the act of 1891, Congress intended the next of kin to be· beneficiaries in every case, and excluded creditors, legatees, assignees and all strangers to the blood, and that the words " next of kin," as used in the proviso, meant next of kin living at the date of the act (1891), to be determined according to the statute of distribution of the respective States of the domicil of the original sufferers.

The court distinguished the case from *Comegys* v. *Vasse,* 1

Pet. 193, and *Williams* v. *Heard,* 140 U. S. 529. In these cases it was held that assignees in bankruptcy took title to the moneys.

The same proviso mentioned in *Blagge* v. *Balch, supra,* and contained in the act of March 3, 1891, is found in the act of 1899, 30 Stat. 1161, 1191. So we know from the above case that the desire of Congress was to make payments to the next of kin of the original sufferers of the losses, and that assignees in bankruptcy should not take. The identification of the particular persons belonging to the class that Congress desired to aid was evidently not within the purpose of the act of 1891 or that of 1899.

Under the act of 1885, the plaintiff in error, Esther S. Buchanan, presented the claims arising out of the capture of the vessels Patapsco and Jane, together with their cargoes. It is not disputed—on the contrary, it is admitted—that she represented on the trial before the Court of Claims, with their consent, all the parties interested in the claim of S. Smith & Buchanan, including those who now claim in opposition to her so far as the proportion of the award to be paid to the different parties is concerned. That she represented these different persons, with their consent, in the examination before the Court of Claims, shows that there was between them at that time no diverse interest involved ; that, so far as regarded the validity of the whole claim and its amount, the parties were situated alike, and had the same interest as against the United States in proving the validity of their claim and the amount thereof. That she was authorized to receive the amount that might be awarded, and that thereafter the question of proportion and distribution would arise, is a plain deduction from the facts stated. As the material point before the Court of Claims was the validity of the claim and its amount, in regard to which all claimants appeared in the same interest, it was not of much moment who should be named to receive the award (if any were to be made), and therefore the statement by the court that Esther S. Buchanan was the administratrix of William B. Buchanan, the survivor of the firm, was not calculated to call for any comment, for the reason, as stated, that the appropriation would be to a

representative of the next of kin, the individual members of which might be thereafter identified. The history given by the Court of Claims was, upon the question of ownership, just enough to form a basis for an appropriation to some one, who would thereupon distribute to the proper persons among themselves. The reports of the court were not intended as an identification of such persons.

After the report of the Court of Claims to Congress, Miss Buchanan had in 1891 taken out letters of administration upon the estate of James A. Buchanan. Soon after the passage of the act of 1899 she obtained the certificates already referred to from the Court of Claims, in one of which, in regard to the ship Jane, it was stated that she "represents the next of kin of William B. Buchanan, the surviving member of the firm of Samuel Smith & Buchanan, deceased, the original owners of the claim upon which said award was made," and in the other certificate, in regard to the ship Patapsco, it was stated that she "represents the next of kin of William B. Buchanan, surviving partner, etc., deceased, the original owner of the claim upon which said award was made." These certificates obviously proceeded upon the report which the courts had theretofore made in these two cases, and in which it is plain that the court reported the fact that the members of the firm of S. Smith & Buchanan, as that firm was constituted in 1798, were the original sufferers of the loss in 1798. It is also plain that the court assumed that the William B. Buchanan named in the certificate was a member of the firm in 1798, which suffered the loss, and it was to the administratrix of the survivor of that firm (1798) that the certificate in truth applied. This simply carried out the purpose of the court, expressly stated in this case, to insist that the decedent whose estate was administered was the same person who suffered loss through the capture of a vessel. In the certificates, as well as in the report of the Court of Claims, it is evident that the court assumed that the persons entitled to the distributive share of the moneys were the next of kin of the original sufferers, whoever they might turn out to be, although the court supposed that William B. Buchanan was the survivor of the firm that suffered the loss in 1798

The case of *United States* v. *Gilliat,* 164 U. S. 42, simply holds that under the special statute therein referred to the certificate made by the Court of Claims and sent to the Secretary of the Treasury was conclusive, and the United States had no right of appeal from the conclusion stated in the certificate.

In this case, the Court of Claims thought there were three members of the firm of S. Smith & Buchanan at the time of these captures. In the fourth finding, in regard to the ship Patapsco, the court reported that "John Donnell and the firm of S. Smith & Buchanan owned jointly the cotton shipped on that vessel, and that Samuel Smith, James A. Buchanan and William B. Buchanan, citizens of the United States, formed the said firm of S. Smith & Buchanan;" that is, formed the firm at the time of the capture in 1798; and in the tenth finding the court found that on November 9, 1820, " said Samuel Smith, James A. Buchanan and William B. Buchanan, copartners, and trading as hereinbefore set forth as copartners, under the firm name of S. Smith & Buchanan, assigned" to assignees for the benefit of their creditors. Thus the court assumed that the firm consisted of the same members in 1798 and in 1820, and that William B. Buchanan was the survivor. This is clearly a mistake. William B. Buchanan was born in 1795, and was then, at the time of these captures, but three years old, and was not a member of the firm at that time, as the state court finds. But clearly the Court of Claims had reference to the firm as it was composed when the losses occurred, whoever in fact were then the members of that firm.

There is nothing in its report which would show that it regarded William B. Buchanan as one of the original sufferers because of his being a member of the firm of 1818, of S. Smith & Buchanan. The whole history of the case as given by the court shows that William B. Buchanan was mistakenly supposed to have been a member of the firm in 1798, and it was on that account that he was regarded as the survivor of that firm. Whatever equity the parties might claim on account of William B. Buchanan becoming a member of the firm in 1818, it is plain that those equities were not regarded or known or supposed to exist by the Court of Claims.

Taking this report of the Court of Claims, it seems to us evident that the appropriations for the payment of the claims made by the act of 1899, 30 Stat. 1194, 1195, proceeded upon the report made by that court to Congress in these cases, and that the language of that act, in the case of the ship Jane, to "Esther S. Buchanan, administratrix, representing Smith & Buchanan, $11,660.21," and in the case of the ship Patapsco, "Esther S. Buchanan, administratrix of the estate of William B. Buchanan, who was the surviving partner of the firm of S. Smith & Buchanan, deceased, $25,056, the value of the cargo shipped by said firm," when taken in connection with the other facts as to the firm of 1798, shows that the appropriation was intended for the administratrix of the survivor of the original firm existing in 1798, at the time the losses occurred, and that the next of kin of the members of that firm at that time were in reality the parties intended by Congress to receive its gratuity. It was not within the intention of Congress to determine by the appropriation who those persons were, but the appropriation was to Esther S. Buchanan as a representative of the class; in other words, the representative of the next of kin of the original sufferers, without therein determining who they were. The intent of Congress to make the payment in each case to the representative of those who were next of kin of the original sufferers, or in other words, of the firm as it stood in 1798, we think is perfectly certain. Whoever they might be, Congress intended the payment to be for those who were the next of kin, and it did not conclude the fact as to who they were, by appropriating the money to Esther S. Buchanan. It was to be for her as the representative of the next of kin of the original sufferers.

Congress could, of course, have given this fund to any one it chose, as it was a case of gratuity in any event; but the question is, what did Congress, in fact, mean when it made the appropriation in the act of 1899, and that meaning, we feel convinced, was as we have already stated.

The cases of *United States* v. *Jordan*, 113 U. S. 418; *United States* v. *Price*, 116 U. S. 43, and *United States* v. *Louisville*, 169 U. S. 249, are not in conflict with this result. In those cases the

appropriation was to the party named in the act and a specific sum was directed to be paid to such party. It was not a payment to him in trust for some other and unidentified members of a class to which he belonged, but it was a positive and absolute direction by Congress to pay to the individual named in the act the amount stated therein. In such cases there is no subject for identification of the members of any class and no occasion for the further action of any one before payment is to be made.

In the case at bar, it is clear that the party named in the appropriation was not entitled to the money absolutely as her own. It was an appropriation to her for the benefit of others, herself included, and those others were identified only as a class, and that class was intended as the next of kin of the firm of S. Smith & Buchanan, as it existed in 1798.

Having obtained payment of the sum appropriated by Congress, the plaintiff in error, Esther S. Buchanan, came into a court of equity and asked to have the fund distributed under its authority. She stated all the facts, and while claiming the right to share in the distribution of the money in her character as one of the next of kin of William B. Buchanan, yet she still submitted the whole question as to the proper distribution to the court. The court had jurisdiction to determine as to the real meaning and the proper construction of the act of Congress, and the highest court of that State, upon appeal from the trial court, has held in substance that it appears that there were but two members of the firm in 1798, and it accordingly decided that the intent of Congress was clearly to make the gift to the next of kin of the members of the firm in 1798, which would result in giving one half to the next of kin of S. Smith and the other one half to the next of kin of James A. Buchanan, among whom are found Esther S. Buchanan and her brother, Wilson C. Buchanan.

We see no error in the decree of the Maryland Court of Appeals, and it is, for the reasons stated,

*Affirmed.*